SALTER, J.
Rogelio Delgado appeals his conviction and sentence for burglary of an occupied conveyance, petit theft, grand theft of a motor vehicle, and kidnapping. The issue before us[1] is whether Delgado committed kidnapping when he and a co-defendant jumped into a pickup truck left running by its driver and drove away with a two-year-old child asleep in the truck, seat-belted into the back seat. We conclude that there was sufficient evidence to support the jury’s verdict and therefore affirm the conviction.

The Truck and the Child: Testimony at Trial

In May 2006, Mr. Gonzalez drove his two-door pickup truck to a furniture store. His girlfriend, Ms. Alvarado, sat in the front seat. His aunt sat in the back seat of the extended cab next to Ms. Alvarado’s two year old daughter, who was asleep in a car seat. Mr. Gonzalez and his aunt started to move the furniture that was to be loaded into the bed of the truck, but they asked Ms. Alvarado to help.
When Ms. Alvarado exited the vehicle and walked into the store to help, the truck’s engine was running and the keys were in the ignition. In a matter of minutes, and before Ms. Alvarado returned to the door of the furniture store, Delgado and his co-defendant commandeered the pickup truck and drove away. Surveillance video recorded the perpetrators and the theft.
The victims immediately reported the theft of the truck with the child inside it, and Ms. Alvarado reported that she had noticed two men in the area. The police found the truck within 30 minutes, about 3.6 miles away from the site of the theft. The truck was in the back of a business parking lot. The engine was still running and the doors were not locked. A detective opened the driver’s side door and saw the child in back in the car seat.[2] The child’s eyes were puffy from crying, and mucus was on her face, but she was otherwise unharmed.
Importantly, the truck cab had been ransacked; the radio had been removed, and Mr. Gonzalez’s tools had been taken as well. Police officers used the surveillance video to search for Delgado, and they found him that evening.
At the close of the State’s case, Delgado moved for a judgment of acquittal on the kidnapping charge based on Faison v. State, 426 So.2d 963 (Fla.1983). The motion was denied, and Delgado was convict *1057 ed of burglary of an occupied conveyance, petit theft, grand theft of a motor vehicle, and kidnapping.

Analysis

Subparagraph 787.01(l)(a)2, Florida Statutes (2006), defines “kidnapping” to include “forcibly, secretly, or by threat confining, abducting, or imprisoning another against her or his will and without lawful authority, with intent to ... [c]om-mit or facilitate commission of any felony.” Paragraph (l)(b) of the statute applies to the child in this case: “Confinement of a child under the age of 13 is against her or his will within the meaning of this subsection if such confinement is without the consent of her or his parent or legal guardian.”
In Faison v. State, 426 So.2d 963, 965 (Fla.1983), the Florida Supreme Court adopted a three-part test to determine whether the evidence in a particular case is sufficient to support a separate charge of kidnapping:
If a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
In this case, Delgado argues that he was unaware of the sleeping child in the back seat when he committed the felony of grand theft auto. It follows, he contends, that the confinement or abduction of the child did not facilitate the theft of the vehicle, and thus that his motion for a judgment of acquittal should have been granted.
We review the motion de novo, but in doing so we review the evidence in the light most favorable to the State, Reynolds v. State, 934 So.2d 1128 (Fla.2006), including conclusions “that a jury might fairly and reasonably infer from the evidence.” Beasley v. State, 774 So.2d 649, 657 (Fla.2000). In this case, it is reasonable to infer from the evidence that Delgado became aware that the child was confined in the truck in the course of removing the radio, taking the owner’s tools, and ransacking the interior of the vehicle in an obvious search for other valuables (if not at the time Delgado jumped into the front seat).
Faison requires “movement or confinement,” not both. Here the confinement of the child continued through the theft of contents within the vehicle and even after Delgado’s abandonment of the unlocked, still-idling vehicle. The continued confinement of the child in this case was essential to Delgado’s attempt to avoid apprehension for the theft of the vehicle and its contents. Only through an anonymous tip of some kind[3] or a voluntary surrender could Delgado have avoided the inference that his successful consummation of the theft of the truck and its contents was *1058 more important to him than the continued and dangerous confinement of the helpless child.
Each of Faison’s three elements was satisfied. The confinement of the child was not slight, inconsequential, and “merely incidental” to the theft of the truck and contents. To the contrary, once Delgado drove away with someone else’s child, he moved from the realm of a crime against property to that of a crime against persons. The Court of Appeals of Indiana considered similar facts (a carj acker drove away an automobile that had been left running in the driveway with the front doors open and children, ages four and seven, in carseats in the back) and addressed the special danger to the children:
We discern that the legislature had it in mind in enacting this part of the kidnapping statute to prevent persons from being exposed to that special danger, that increased probability of injury or death, which results when one is seized and confined or transported in a commandeered vehicle. The message intended for the would-be wrong-doer, is that if you are going to steal or commandeer a vehicle, let the people in it go and don’t force people into it against their will.
Taylor v. State, 879 N.E.2d 1198, 1202-03 (Ind.Ct.App.2008) (quoting Wilson v. State, 468 N.E.2d 1375, 1378 (Ind.1984)). North Carolina recognizes this special danger as well by recognizing a “kidnapping in the second degree” with a lesser range of punishment if “the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted.”[4] Although the Florida statute does not include such language, the “special danger” analysis of kidnapping squares neatly with the “not slight, inconsequential, and merely incidental” element of Faison.
The second and third elements of Fai-son were plainly satisfied as well. Kidnapping a child is not inherent in the nature of the theft of a vehicle and the property within the vehicle, and the confinement of the child had significance independent of those crimes. As already noted, the continuation of that confinement substantially lessened Delgado’s risk of detection and apprehension.[5]
The trial court did not err in denying Delgado’s motion for a judgment of acquittal.
Affirmed.

. Delgado raised a second issue as well, but his arguments on the point have no merit.

. The detective testified that he did not have to get in the front seat and look back in order to see the child. After opening the driver’s side door, he “moved the seat over a little bit, then there was a little crease and then I looked and then I could see her, then I folded the car seat forward because I remember having a clear view of the little girl.”

. While we naturally agree with defense counsel’s assertion that there is no statute or case law imposing such a duty, the failure to attend to the child’s safety (immediately upon becoming aware of her presence) extended her involuntary confinement. The jury could reasonably and fairly infer that Delgado’s abandonment of the confined child was to facilitate commission of the theft by avoiding detection and apprehension. Because Delgado and his co-defendant were the only persons who knew the location of the truck and the child for 30 minutes or more, Delgado extended the time of confinement by keeping that information to himself.

. N.C. Gen.Stat. Ann. § 14-39(b) (2008).

. In Robinson v. State, 757 So.2d 1267, 1267 (Fla. 4th DCA 2000), the Fourth District affirmed the conviction of a defendant who "stole a car containing a child in a car seat.” The facts recited in that opinion, however, do not report the point at which the defendant became aware of the child.