DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JIMMIE ERNEST GLOVER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-1182

[November 15, 2017]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; James W. McCann, Judge; L.T. Case No. 2014CF000591A.

Carey Haughwout, Public Defender, and Tom Wm. Odom, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

Jimmie Ernest Glover was convicted of numerous offenses after a jury trial. At issue in this appeal are his two convictions for kidnapping. Glover argues that his actions did not constitute kidnapping because the movement of his victims was slight and inconsequential and did not assist the commission of another crime. We disagree and affirm.

One night, a group of five young men and two young women met at a neighborhood park. On their way into the park, the two women passed Glover, who was walking in the opposite direction. They headed to a table in the back of the park and met up with the rest of the group. Later, as the victims were about to leave the park, Glover approached them, produced what appeared to be a handgun, and announced that they were "all gonna die tonight." Glover ordered all of the victims on the ground and took personal items from three of the victims, including a cell phone and a wallet.

Afterward, Glover—wielding the gun—ordered the two women to get up from the ground and completely disrobe. The women started to comply

and Glover then "brought [them to] these trees and separated [them]." One of the women disrobed completely. Glover then placed a gun to the back of her head and proceeded to rape her. He began to move her toward a picnic table. While this was happening, the five men remained face down on the ground and could make out some of what was happening, although their view was partially obstructed by "a fairly big tree."

Glover continued to threaten all of the victims that they were going to die. Meanwhile, the second woman, who had only partially disrobed, shouted, "Run," and the group scattered and fled. The woman who had been raped also fled, leaving her clothing behind. Glover proceeded to chase down the second woman but she was able to escape after Glover removed her pants.

After a jury trial, Glover was convicted of numerous offenses, including attempted robbery, robbery, attempted sexual battery, sexual battery, aggravated battery, and kidnapping. On appeal, Glover challenges only the kidnapping convictions. He contends the state failed to prove that his movement of the women was any more than slight, inconsequential, and merely incidental to the sexual battery and attempted sexual battery, and that the trial court should have granted his motion for judgment of acquittal. We disagree.

We review the trial court's denial of Glover's motion for a judgment of acquittal de novo. *See Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). "Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence." *Id.* "If, after viewing the evidence *in the light most favorable to the State*, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Id.* (emphasis added).

Section 787.01(1)(a)2., Florida Statutes (2014), defines kidnapping as "forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to . . . . [c]ommit or facilitate commission of any felony." The Florida Supreme Court "has recognized that the statute's literal interpretation would result in a kidnapping conviction for any criminal transaction which inherently involves the unlawful confinement of another person, such as robbery or sexual battery." *Delgado v. State*, 71 So. 3d 54, 59-60 (Fla. 2011) (citation and internal quotation marks omitted). Therefore, in *Faison v. State*, 426 So. 2d 963, 965-66 (Fla. 1983), the Florida Supreme Court, "adopted a three-part test" "in an effort to limit the scope of that particular subsection so as 'to prevent any crime that involves some level of confinement or detention from also constituting a kidnapping[.]'"

2

*Delgado*, 71 So. 3d at 60 (quoting *Lynch v. State*, 2 So. 3d 47, 62 (Fla. 2008)).

The supreme court has since elaborated on the *Faison* test:

> *Faison* provided the framework for analyzing the facts of a case to determine whether a defendant's conduct amounts to a confinement crime under section 787.01(1)(a)2. distinct from other criminal charges involving forcible felonies. Pursuant to *Faison,*
>
> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
> (a) Must not be slight, inconsequential and merely incidental to the other crime;
>
> (b) Must not be of the kind inherent in the nature of the other crime; and
>
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Id.* (alteration in original) (quoting *Faison*, 426 So. 2d at 965).

The facts and reasoning of *Faison*, 426 So. 2d 963, provide guidance. There, the defendant entered an office where a female employee was working alone and violently dragged her from her desk in front of a large window to the rear of the office where he sexually assaulted her. *Id.* at 964. He then fled to a residential area and broke into a woman's home, violently dragged her from the kitchen down a hallway into the bedroom, and sexually assaulted her after beating her to a state of near unconsciousness. *Id.* The district court affirmed the kidnapping convictions, finding as follows:

> (a) The movements of both victims were effected by substantial force and violence inflicted by Faison to overcome their resistance and to make them to go where he wanted. It cannot be said, therefore, that the asportations were either slight, inconsequential or merely incidental to the sexual batteries which followed.

(b) These movements were not inherent or necessarily required in the commission of the sexual batteries, which could have been accomplished on the spot without any asportation whatever.

(c) Both abductions were from an area where the rape could have been more easily observed through a window – in the first victim's office, and the second one's kitchen – to the "relative seclusion" of the rear and restroom of the office and the bedroom of the home, respectively. Moreover, each asportation removed the victim from access to a door – again, in the office and in the kitchen – through which she might have escaped. Hence, each made the sexual battery substantially easier to commit *and* substantially reduced the danger of detection. . . . The fact that relatively short distances were involved makes no difference.

*Id.* at 966 (emphasis in original) (quoting *Faison v. State*, 399 So. 2d 19, 21-22 (Fla. 3d DCA 1981)).

The Florida Supreme Court found that the district court reached the correct result, with the exception of a footnote in the district court opinion not relevant here. *Id.*

Although Glover did not use great force to move the women to the area behind a "fairly large tree," he deliberately directed the women to disrobe *completely* before ordering them to move behind the tree which Glover was attempting to hide behind while committing the sexual battery. These actions, taken together, were not inconsequential nor were they inherent in the act of sexual battery, and taken in the light most favorable to the state they establish that Glover intended to make it easier to commit sexual batteries and to reduce the danger of detection. *See Carter v. State*, 762 So. 2d 1024, 1027 (Fla. 3d DCA 2000) (affirming kidnapping conviction where defendant entered a gym where victim was alone in the public exercise area, robbed her at gunpoint, and directed her through a doorway into a nearby hallway before committing sexual battery); *Bush v. State*, 526 So. 2d 992, 993-94 (Fla. 4th DCA 1988) (affirming kidnapping conviction where defendant dragged victim from side of well-traveled road to the woods); *Lamarca v. State*, 515 So. 2d 309, 310-11 (Fla. 3d DCA 1987) (affirming kidnapping conviction where defendant "pulled out a medium sized kitchen knife, pointed it at [the victim] and forced her into the last stall in the restroom" before attempting to commit sexual battery).

*Affirmed.*

WARNER and KLINGENSMITH, JJ., concur.

*  *  *

**Not final until disposition of timely filed motion for rehearing.**